IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHEL DZARINGA                     :

    v.                              :   Civil Action No. DKC 12-1609

SEARS, ROEBUCK & CO.                :

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case is the motion for summary judgment filed by Defendant Sears, Roebuck and Company ("Sears"). (ECF No. 16). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be granted.

**I. Background**

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

Plaintiff is a Congolese national who was an employee of Defendant's store in Bowie, Maryland from January 24, 2007 to February 18, 2010. This case centers around Defendant's termination of Plaintiff's employment.

Sears employees are responsible for submitting accurate time and attendance records for hours worked.  The employee is responsible for punching in when he arrives at work and punching out when he leaves, along with punching in and out when he takes his lunch break.  In these circumstances, the employee merely enters his name into the system and the program's internal clock records the time.  If the employee forgets to punch in or out at the appropriate time, however, he must go to the program and manually provide the time he arrived or departed.  If there is an error in the employee's time sheet, it is the employee's responsibility to submit a "punch correction sheet" to human resources to correct the error.  Employees may take overtime only if authorized by their supervisors. (ECF No. 16-2, at 12-14, Plaintiff's deposition transcript).  Plaintiff signed a form acknowledging these rules on his first day of work.  (ECF No. 16-2, at 59).

On January 22, 2010, Plaintiff arrived at work at 8:35 am, but did not punch in at that time.  When he later went to enter manually his start time, he entered 8:05 am.  Plaintiff's supervisor, James Pressley, informed Plaintiff of his error.  The following day, Plaintiff met with Pressley and Eileen Brady, a human resource specialist for Sears where they informed Plaintiff of the timekeeping error.  Plaintiff did not offer to correct his time sheet, but instead was instructed to take an

2

off-the-clock lunch break long enough to insure that he would not incur overtime, for which he was not authorized. (*See* ECF 16-2, at 45-53, Plaintiff's deposition transcript; ECF No. 16-2, at 65, Brady affidavit).

Plaintiff's time sheet for this period ended up giving him 0.22 hours of overtime. On January 25, 2010, Pressley and Brady confronted Plaintiff with this issue. Plaintiff's explanation was that he did not take a long enough break. (*Id.* at 71, Pressley's memorandum to the record, Feb. 4, 2010). Following consultation with Sears's corporate human resources department, Pressley decided to terminate Plaintiff's employment on February 18, 2010 because he falsified his time sheet. (*Id.* at 25). Plaintiff alleges that he received no reasons for being fired nor any sort of documentation saying as much.[1] Furthermore, about thirty minutes after he was terminated, he called Sears's corporate human resources department to confirm the employment action, whereupon he was informed that he was still listed as an active employee. (ECF No. 18, at 2).

Plaintiff alleges that his termination was done on the basis of discrimination due to his national origin (Congolese)

---

[1] Two documents in the record suggest past issues with Plaintiff's time and attendance. First, Plaintiff was cited for taking 1.74 hours of unauthorized overtime on May 13, 2009. (ECF No. 16-2, at 61). Second, Pressley's memorandum for the record suggested that Plaintiff frequently would manually enter in his arrival and departure times. (*Id.* at 73).

3

as evidenced by the lack of any sort of documentation to support the termination. (ECF No. 16-2, at 22-23). Furthermore, Plaintiff accuses Pressley of harboring animus towards him on account of his national origin. As evidence, Plaintiff points to comments Pressley made about Plaintiff's accent, including that Plaintiff "speak[s] the language of lions" and that he only speaks English well when he is interacting with female customers. (*Id.* at 31). Furthermore, Plaintiff alleges that Pressley confronted Plaintiff and asked him who gave him his supervisory position. (*Id.* at 32). Plaintiff also did not appreciate Pressley's supervision, finding Pressley's treatment of him to be "like a child," with "no consideration of [Plaintiff's] value" by, for example, removing an employee Plaintiff supervised without consulting or informing Plaintiff beforehand. (*See id.* at 32-42).

Following his termination, Plaintiff applied for unemployment benefits but was initially denied after the state agency, relying on information obtained from Sears, found that he was discharged for gross misconduct and therefore ineligible for benefits pursuant to Maryland Code, Labor and Employment § 8-1002. Plaintiff appealed that decision to the Circuit Court for Prince George's County, Maryland which reversed the agency's decision. The court found that Plaintiff did not intend to or deliberately falsify his time report as required to demonstrate

4

"gross misconduct." (ECF No. 19-1). Sears argued that even if Plaintiff's error was inadvertent, his failure to correct his time report constituted gross misconduct, but the court disagreed, finding that "it was reasonable for the Petitioner to believe that by taking a longer lunch break, as requested by his employer, that he was making up for the time differential with no need to make further correction." (*Id.* at 3).

On July 27, 2012, Plaintiff filed a *pro se* complaint in this court. (ECF No. 1). Plaintiff contends that Defendant's termination of his employment violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of national origin. Following discovery, Defendant moved for summary judgment on March 28, 2013. (ECF No. 16). Plaintiff filed an opposition on May 1, 2013, (ECF No. 18),[2] and Defendant replied on May 20, 2013 (ECF No. 19).

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving

---

[2] Plaintiff's deadline to respond to Defendant's motion was April 15, 2013. Plaintiff acknowledges the untimeliness of his opposition, but contends that he did not receive the letter the Clerk's office sent in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), informing him that a dispositive motion had been filed and that he had had seventeen (17) days to respond or risk entry of judgment against him. Plaintiff's untimeliness will be excused.

party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex,* 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(c) when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (*quoting Felty v. Graves-Humpreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

7

**III. Analysis**

Plaintiff has alleged unlawful employment discrimination on the basis of national origin. A plaintiff may establish a claim for intentional discrimination using two methods. He may either demonstrate "through direct or circumstantial evidence" that his national origin "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or he may "proceed under a 'pretext' framework" - commonly referred to as the *McDonnell Douglas* approach - "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination," *id.* at 285.

Direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (citation and internal quotation marks omitted). "Only the most blatant remarks, [the intent of which] could be nothing other than to discriminate . . . constitute direct evidence of discrimination." *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F.Supp.2d 470, 484 (D.Md. 2013) (citation and internal quotation marks omitted). If believed,

direct evidence "would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (citation and internal quotation marks omitted), *rev'd on other grounds*, 517 U.S. 308 (1996). To defeat a motion for summary judgment, the evidence must show that the employer announced, admitted, or "otherwise unmistakably indicated" that an impermissible consideration was a determining factor, or that discrimination can properly be assumed from the circumstances. *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982).

Plaintiff has presented no direct evidence that his employment was terminated based on national origin. The only evidence in the record approaching mention of Plaintiff's national origin was Pressley's alleged comment to Plaintiff that he was "speaking the language of lions," and that his English improved markedly when he was interacting with female customers. (ECF No. 16-2, at 31). Even if these comments constitute evidence of a discriminatory attitude on the part of Pressley, they were in no way linked to Plaintiff's termination. Indeed, Plaintiff could not pinpoint when these statements were allegedly made, and did not suggest that they were contemporaneous with the termination decision, nor that they came in a context related to Plaintiff's employment status. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598 (4th Cir.

1999), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (derogatory remark uttered eighteen months prior to termination did not constitute direct evidence of discrimination); *O'Connor*, 56 F.3d at 549 (statement made two days prior to the plaintiff's termination that the company needed to "get some young blood" did "not evince an intent to discharge an older employee"); *Nana-Akua*, 921 F.Supp.2d at 484 (supervisor imitating plaintiff's accent and saying "I don't like your accent" approximately two months prior to plaintiff's termination date did not constitute direct evidence of discrimination as they were not in any way linked to plaintiff's termination); *E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F.Supp.2d 897, 907 (D.Md. 2011) ("Where the derogatory statement bears little relation to the contested employment action and is attenuated by time, a plaintiff will likely fail to satisfy the nexus requirement.").

Absent direct evidence, Plaintiff must prove his case circumstantially using the pretext framework established in *McDonnell Douglas*. Under this framework, Plaintiff must first demonstrate a *prima facie* case of discriminatory discharge, which requires Plaintiff to show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing at a level that met his employer's legitimate expectations at the time of the adverse employment

action; and (4) his position remained open or was filled by a similarly qualified applicant outside the protected class. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007).[3]

Defendant does not dispute that the first two prongs are satisfied. It contends that Plaintiff has failed to satisfy the third and fourth prong, the latter of which it characterizes as requiring the plaintiff to show that the adverse employment action came "under circumstances giving rise to an inference of discrimination." (ECF No. 16-1, at 13-14 (*quoting Benahmed v. BAE Sys. Tech. Solutions & Services, Inc.*, No. 12-1974-CW, 2012 WL 5426432, at *4 (D.Md. Nov. 6, 2012)). According to Sears, Plaintiff was on notice of the policy regarding employees' responsibility for ensuring correct time cards and not incurring unauthorized overtime, but failed to achieve an accurate time sheet as evidenced by the 0.22 hours of unauthorized overtime he accumulated for the period ending January 23, 2010. The record contains two items of relevance to Plaintiff's performance: first, a document entitled "Documentation of Performance Issues" dated May 13, 2009. This document was completed by Alejandro McClain and noted that Plaintiff took 1.74 hours of unauthorized

---

[3] Alternatively, a plaintiff could argue that he was subject to discipline stricter than that meted out to non-Congolese employees by establishing that similarly situated employees outside plaintiff's class received more favorable treatment, *i.e.*, not being fired. *See Stoyanov v. Mabus*, No. DKC-07-1953, 2013 WL 1104978, at *4 (Mar. 15, 2013). Dzaringa has made no such claim. (*See* ECF No. 16-2, at 22).

11

payroll for that week. (ECF No. 16-2, at 61). Second, Pressley's February 4, 2010 memorandum for the record which alludes to Plaintiff's repeated practice of manually punching in his times. (*Id.* at 73).

Plaintiff has provided no evidence that his job performance at Sears met Sears's legitimate expectations at the time of the adverse employment action, nor has he produced evidence that Sears's "expectations" were not legitimate. Plaintiff contends that in more than three years of working at Sears he never had an issue with his conduct, (ECF No. 18, at 1-2), but Plaintiff's own view of his performance is irrelevant. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). It is undisputed that he failed to follow Defendant's policies, and the only evidence he provides to demonstrate Defendant's nefarious motive are some stray remarks by Pressley and the general feeling that Pressley was not giving him the autonomy and respect he thought his position deserved. Such is the "scintilla of evidence in support" that is insufficient for the nonmoving party on a motion for summary judgment. *Anderson*, 477 U.S. at 252.

Finally, Plaintiff places great weight on the circuit court's finding that Sears did not demonstrate that Plaintiff engaged in "gross misconduct." He contends that this serves as evidence that the real reason for his termination was

discriminatory animus. Even accepting the circuit court's finding, it has no bearing here as the two cases are unrelated and concerned with different matters. The circuit court found it reasonable to conclude that Plaintiff's timecard errors were inadvertent and therefore not the "willful and wanton disregard" of his obligations necessary for a finding of gross misconduct. The circuit court case was concerned with the egregiousness of Plaintiff's conduct and whether it warranted a denial of unemployment benefits. This case deals with whether Defendant's decision to terminate Plaintiff was based on discriminatory intent. Merely because a circuit court determines that employee's mistakes were inadvertent for purposes of receiving unemployment benefits does not mean that he was performing up to Sears's legitimate performance expectations and eligible for discipline, up to and including termination, let alone that that termination was done because of Plaintiff's national origin. Plaintiff is thus unable to resist summary judgment.[4]

---

[4] Because Plaintiff cannot satisfy the third prong of the *prima facie* case, it is unnecessary to consider whether he satisfied the fourth prong, or whether he had to at all. *See Lettieri*, 478 F.3d at 647-48 (where the firing and replacement hiring decisions are made by different decisionmakers, the plaintiff is relieved of the burden of showing that he was replaced by someone outside his protected class).

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Sears will be granted. A separate order will follow.

                                              /s/
                                DEBORAH K. CHASANOW
                                United States District Judge